UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| IVAN ACEVEDO-COLON, MILAGROS ARROYO, and their CONJUGAL PARTNERSHIP,<br><br>    Plaintiffs,<br><br>    v.<br><br>JOSE FUENTES AGOSTINI, et al.,<br><br>    Defendants. | Civil No. 98-1273 (JAF) |

## OPINION AND ORDER

Plaintiffs, Iván Acevedo-Colón; his wife, Milagros Arroyo; and their conjugal partnership, bring this suit pursuant to 42 U.S.C. §§ 1983, 1985, and Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141. The Defendants are José Fuentes-Agostini, Attorney General of the Commonwealth of Puerto Rico, in his official capacity; Livia Alvarez, Executive Director of the Institute of Forensic Sciences (the "Institute"); Ramón Orlando Díaz, Deputy Director of the Institute; Ana Dávila-Soto, Assistant Director of the Maintenance Division of the Institute; Julia Z. Cardona, a psychiatrist[1] at the State Insurance Fund Corporation ("S.I.F.C."); Myrta Rosario, a clinical psychologist at the S.I.F.C.; Oscar Ramos-Meléndez,

---

[1]The complaint states that Defendant Cardona is a psychiatrist. Defendants' answer denies that she is a psychiatrist, without specifying her field of expertise.

Civil No. 98-1273 (JAF)                                                    2-

Administrator of the S.I.F.C.;[2] and the Hato Rey Psychiatric Hospital, Inc. ("Mepsi").  Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## I.

### Facts

Plaintiff Iván Acevedo-Colón ("Plaintiff") was a career employee of the Institute, which is a department within the Department of Justice of the Commonwealth of Puerto Rico.  Plaintiff had been a janitor at the Institute since June of 1990.  At some point, it is unclear exactly when, Plaintiff allegedly threatened to cause grave bodily harm or death to Dr. Livia Alvarez and other Institute personnel.  Thereafter, on June 28, 1996, Defendant Díaz summarily suspended Plaintiff and confiscated his identification card, access card, and keys.

That same day, Plaintiff showed Defendant Rosario the suspension letter.  Defendant Rosario referred Plaintiff to Mepsi for a psychiatric evaluation.  Despite Defendant Rosario's insistence that Plaintiff be committed to a psychiatric hospital, Plaintiff steadfastly refused.  Defendant Rosario then contacted Defendant Dávila-Soto, one of Plaintiff's supervisors at the Institute.  Defendant Dávila-Soto informed Defendant Rosario that Plaintiff had

---

[2]Defendants Alvarez, Díaz, Dávila-Soto, Cardona, Rosario, and Ramos-Meléndez are all sued in their personal capacities.  We refer to them collectively as the "Individual Defendants."

Civil No. 98-1273 (JAF)                                                    3-

threatened Defendant Alvarez' life and was suffering from auditory hallucinations.

On July 3, 1996, Defendant Mepsi contacted Defendant Rosario to inform her that Plaintiff had not arrived for a scheduled psychiatric evaluation. Defendant Rosario then contacted Defendant Cardona, and together they obtained a judicial order from the Court of First Instance of Puerto Rico for Plaintiff's 24-hour commitment to Mepsi for a psychiatric evaluation. Plaintiff remained committed at Mepsi from July 3, 1996 until July 16, 1996, beyond the twenty-four hours authorized by the order. During Plaintiff's confinement at Mepsi, he was not allowed to receive any visitors.

On July 9, 1996, while Plaintiff was still committed at Mepsi, one of Plaintiff's supervisors, Defendant Díaz, allegedly notified him that, effective July 5, 1996, he would be reinstated to his position at the Institute with a "rest status." Plaintiff argues that he never received such notification.

After Plaintiff's release from Mepsi, on July 16, 1996, Defendant Díaz insisted that Plaintiff submit to further psychiatric evaluations and referred him to the Mental Services and Drug Rehabilitation Administration of the Commonwealth of Puerto Rico's Health Department("ASSMCA"). Plaintiff does not state how many times he was treated, but states that his last psychiatric evaluation at the ASSMCA was on March 17, 1997.

Civil No. 98-1273 (JAF)                                              4-

On May 20, 1997, Defendant Alvarez sent Plaintiff a letter informing him of her intentions to dismiss him based upon an S.I.F.C. decision rendered on April 14, 1997. Plaintiff does not explain the nature of this S.I.F.C. decision, beyond stating that it held that Plaintiff had abandoned his work.

## II.

### Motion to Dismiss

Under Rule 12 (b)(6), a defendant may move to dismiss an action against him based only on the pleadings for "failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [nonmovant]." Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993); see also Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992). We then determine whether a plaintiff has stated a claim upon which relief can be granted.

## III.

### Liability Under Section 1983

Section 1983 of Title 42 provides a substantive cause of action for damages and injunctive relief against individuals and governmental bodies who have deprived a person of his rights privileges and

Civil No. 98-1273 (JAF)                                                    5-

immunities secured by the United States Constitution and federal laws.[3]

In order to establish liability under section 1983, a plaintiff must

allege and prove, first, that defendants acted under color of state

law.  Gomez v. Toledo, 446 U.S. 635 (1980); Gutierrez-Rodriguez v.

Cartagena, 882 F.2d 553, 559 (1st Cir. 1989).  Second, a plaintiff must

show that the defendants' conduct deprived him of rights, privileges

or immunities secured by the Constitution or by federal law.

Rodriguez-Cirilo v.Garcia, 115 F.3d 50 (1st Cir. 1997); Gutierrez-

Rodriguez, 882 F.2d at 559.  Third, a plaintiff must show that the

defendants' conduct caused this deprivation.  Id.  A plaintiff must

establish for each codefendant that his or her own acts or omissions

deprived the victim of protected rights.  Monell v. Department of

Social Services, 436 U.S. 658, 694 n.58 (1978) (citing Rizzo v. Goode,

423 U.S. 362, 370-71 (1976)).  In other words, a section 1983

plaintiff must show causation: that Defendants' acts caused plaintiff

to be deprived of his constitutional right.  Ameluxen v. University of

_____

[3]Section 1983 provides:

> Every person who, under color of any statute,
> ordinance, regulation, custom or usage, of any
> State or Territory, subjects, or causes to be
> subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action
> at law, suit in equity, or other proceeding for
> redress.

42 U.S.C. § 1983.

Civil No. 98-1273 (JAF)                                                    6-

Puerto Rico, 637 F.Supp. 426 (D.P.R. 1986).    In addition, the

defendants' conduct or inaction must have been intentional, Simmons v.

Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986), grossly negligent, or must

have "amounted to a reckless or callous indifference to the

constitutional rights of others." Gutierrez-Rodriguez, 882 F.2d at

562.

## IV.

## Analysis

### A.   Federal Civil Rights Claims

####   1.   Standing

The express language of section 1983 provides that only the party

whose civil rights have been violated may bring a claim.    See

Valdivieso Ortiz v. Burgos, 807 F.2d 6, 7 (1st Cir. 1986) (holding that

plaintiffs could not maintain a section 1983 claim for loss of

familial association unless the government action was aimed at the

relationship between a parent and young child because § 1983 actions

are personal and do not inure to any person other than the person

injured); Jaco v. Bloechle, 739 F.2d 239, 242 (6th Cir. 1984) (stating

that claims brought pursuant to 42 U.S.C. § 1983 are "personal

action[s] cognizable only by the party whose civil rights are

violated").    "Family members do not have an independent claim under

section 1983 unless the constitutionally defective conduct or omission

was directed at the family relationship." Torres v. United States, 24

F.Supp. 2d 181, 183 (D.P.R. 1998) (citing Brown v. Ives, 129 F.3d 209,

Civil No. 98-1273 (JAF)                                                    7-

211 (1ˢᵗ Cir. 1997) and <u>Robles Vazquez v. Garcia</u>, 110 F.3d 204, 206 n.4

(1ˢᵗ Cir. 1997)); <u>see also</u> <u>Broadnax v. Webb</u>, 892 F.Supp. 188 (E.D.

Mich. 1995) (stating that allowing persons other than those whose

rights have been violated to sue would open the floodgates of 42

U.S.C. section 1983 litigation to an unmanageable point).

    Milagros Arroyo is the wife of Iván Acevedo-Colón, the fired

employee and individual involuntarily committed to a psychiatric

hospital.  Their conjugal partnership is a separate entity from either

Arroyo or Acevedo-Colón and it has a distinct identity.  <u>Reyes</u>

<u>Castillo v. Cantera Ramos, Inc.</u>, 96 J.T.S. 9 at 605; <u>see also</u>

<u>Maldonado Rodriquez v. Banco Central Corp.</u>, 95 J.T.S. 48 at 806 n.6.

Only the victim of the civil rights violation, <i>i.e.</i>, the victim of the

firing and confinement, can maintain a section 1983 claim.  From the

face of the complaint it appears that Arroyo and the conjugal

partnership rest their section 1983 claims on Acevedo-Colón's alleged

civil rights violation.  Neither Arroyo nor the conjugal partnership

demonstrate that any act on the part of Defendants was directed at her

or it.  Rather, they complain that they suffered harm as a result of

Defendants' acts, which were directed at Acevedo-Colón.  Accordingly,

we dismiss the section 1983 claims of Arroyo and the conjugal

partnership for lack of standing.  <u>Warth v. Seldin</u>, 422 U.S. 490, 511

(1975); <u>Buenrostro v. Collazo</u>, 777 F.Supp. 128, 134 (D.P.R. 1991);

<u>Soto Gomez v. Lopez Feliciano</u>, 698 F.Supp. 28, 30 (D.P.R. 1988).

Civil No. 98-1273 (JAF)                                                    8-

2.   **Section 1983 Claim Based on Alleged Violation of**
     **Liberty Right**

     a.   **Statute of Limitations**

     Defendants argue that the remaining section 1983 claim belonging

to Plaintiff Acevedo-Colón should be dismissed because it is time-

barred by the statute of limitations.  The statute of limitations for

section 1983 claims in Puerto Rico is one year, reflecting the forum

state's personal injury statute of limitations.  Muniz-Cabrero v.

Ruiz, 23 F.3d 607, 610 (1st Cir. 1994).  However, federal law rather

than state law determines the date of accrual -- when the limitations

clock begins to run.  Id.  Federal law provides that the limitations

clock begins to run once the plaintiff knows or should have known of

the injury on which the action was based.    Rivera-Muriente v.

Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992).  In other words, a

cause of action accrues when a plaintiff "possesses sufficient facts

about [the] harm done that reasonable inquiry will reveal [the] cause

of action."  Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181

(4th Cir. 1996); Heck v. Humphrey, 512 U.S. 477 (1994); Carey v.

Piphus, 435 U.S. 247, 258 (1978)); Calero-Colon v. Betancourt-Lebron,

68 F.3d 1, 3 (1st Cir. 1995).

     Plaintiff was confined at Mepsi from July 3, 1996 to July 16,

1996.  Plaintiff filed the section 1983 claim alleging a liberty right

violation on March 17, 1998, more than one year after the alleged

injury took place.  Plaintiff alleges that it was not until after

AO 72
(Rev 8/82)

Civil No. 98-1273 (JAF)                                              9-

November 25, 1997, when he requested from ASSMCA a copy of his file,

that he saw for the first time the state court's denial of Defendants'

request for an extension of time of the judicial order and, thus,

became aware that Defendants had allegedly deprived him of his liberty

rights without due process.

We find Plaintiff's accrual argument unpersuasive.  A cause of

action accrues when the plaintiff possesses sufficient facts about the

harm done to him that reasonable inquiry will reveal his cause of

action.  See  United States v. Kubrick, 444 U.S. 111, 122-24 (1979).

"To excuse [a plaintiff] from promptly [making inquiry] by postponing

the accrual of his claim would undermine the purpose of the

limitations statute." Kubrick, 444 U.S. at 123.

In Kubrick, a hospital administered a particular antibiotic to

Kubrick to treat an infection.  Six weeks later, Kubrick began to

experience a loss of hearing, and shortly thereafter doctors advised

him that it was highly possible that his loss of hearing was the

result of the antibiotic treatment.  However, it was not until more

than two years later, after the applicable statute of limitations had

run, that Kubrick learned that the administration of the antibiotic

may have constituted medical malpractice. In holding that Kubrick's

claim was time-barred, the Supreme Court noted that when the plaintiff

knew that he was hurt and knew who inflicted his injury, he was

obliged to inquire further about the potential for a negligence claim.

The Court stated that accrual of a claim does not "await awareness by

Civil No. 98-1273 (JAF)                                                    10-

the plaintiff that his injury was negligently inflicted." 444 U.S. at

123.

Therefore, "for purposes of a section 1983 claim, a cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice -- e.g., by the knowledge of the fact of injury and who caused it -- to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 955-56 (4th Cir. 1995) (cause of action under section 1983 accrues either when plaintiff has knowledge of claim, or when he or she is put on notice to make reasonable inquiry and inquiry would reveal existence of colorable claim, such as when plaintiff has knowledge of fact of injury and who caused it); Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181-82 (4th Cir. 1996) (cause of action under § 1983 accrues when plaintiff possesses sufficient facts about harm done that reasonable inquiry will reveal cause of action); Devore v. Champion International Corp., No. 93-6329, 1995 WL 68772 * 1 (6th Cir. Feb. 17, 1995) ("[T]he statute of limitations is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and as a reasonable person is not put on inquiry.") (internal quotes omitted); McGregor v. Louisiana State University Bd. of Sup'rs, 3 F.3d 850, 856 (5th Cir. 1993).

Plaintiff's section 1983 claim regarding his liberty right accrued when he should have known of the violation. We find that a reasonable

Civil No. 98-1273 (JAF)                                              11-

person in Plaintiff's shoes should have known of a potential violation

of his liberty right immediately after spending over a week

involuntarily in a psychiatric hospital.  Even if Plaintiff did not

see the court order denying an extension of his 24- hour

hospitalization, Plaintiff still had sufficient facts about the harm

done to him that he should have inquired.  A reasonably diligent

investigation of public court records would have revealed that there

was no legal authority permitting his psychiatric commitment.

Plaintiff had actual knowledge that he was committed against his will.

Plaintiff's basic argument here is that the statute of limitations was

tolled because he did not know it was illegal to incarcerate him

involuntarily; *i.e.*, he did not know of the violation of his liberty

right.  The fact that he was not aware that his incarceration was

illegal until he saw the court order is not sufficient to toll the

statute of limitations.  Once a plaintiff knows that he has been hurt

and knows who inflicted the injury, the plaintiff is on inquiry

notice; he has a duty to investigate the details of the infliction of

h a r m    t h a t    a r e    r e a s o n a b l y    d i s c o v e r a b l e.

        The issue here is analogous to a claim that execution of a search

warrant violated a plaintiff's Fourth Amendment rights.  The statute

of limitations in such a case is not tolled until the plaintiff

realizes that the search warrant was defective.  Rather, the statute

of limitations begins to run when a reasonable plaintiff should be

aware of a potential violation of his rights; and a reasonable

Civil No. 98-1273 (JAF)                                                      12-

plaintiff should be aware of a potential violation when the search

warrant is presented and the search executed. <u>Triestman v. Probst</u>,

897 F. Supp. 48, 50 (N.D.N.Y. 1995) (holding that statute of

limitations on section 1983 and Bivens claims began to run when

warrant was presented and search executed, and was not tolled due to

fact that warrant and supporting affidavits were sealed following

presentation and execution; although plaintiff claimed that he had no

way of knowing until documents were unsealed that warrant was illegal,

he was clearly aware of search and seizure at time of execution and

should have been aware at that time that there was possible violation

of his rights); <u>Shannon v. Recording Indus. Ass'n of Am.</u>, 661 F.Supp.

205, 210 (S.D. Ohio 1987) (holding that plaintiffs' injury "occurred

when their property was seized" and not when they learned the reasons

for the search and seizure or that the affidavits in support of search

warrants were false); <u>Dennis v. Figueroa</u>, 642 F. Supp. 959, 960-61

(D.P.R.1986) (holding that § 1983 action for unlawful search and

seizure accrued on dates of seizures rather than date on which state

court declared the acts illegal).  The plaintiffs in the above cited

cases argued that they did not know of the illegality of the searches.

Similarly, Plaintiff Acevedo-Colón argues that he did not know of the

illegality of his confinement.  These cases show that where a

reasonable plaintiff should have inquired regarding the potential

violation of his rights, failure to know that defendant's act was

illegal does not toll the statute of limitations.  Accordingly,

Civil No. 98-1273 (JAF)                                                          13-

Plaintiff Acevedo-Colón's section 1983 claim based on a deprivation of his liberty right is time-barred.

### b.    **Sufficiency of Facts Alleged**

In the alternative to dismissal on statute of limitations grounds, we dismiss the section 1983 claim for violation of a liberty right for failure to allege sufficient facts.

Plaintiff brings claims pursuant to sections 1983 and 1985 against Defendants Mepsi, Cordero, and Rosario for conspiring to deprive him of his liberty rights without due process by confining him at Mepsi against his will for more than the twenty-four hours permitted by the court order.[4]  See 42 U.S.C. §§ 1983, 1985(3).

Mepsi, a private psychiatric hospital, is not a state actor within the meaning of section 1983.  Therefore, Mepsi cannot be held liable under section 1983.  However, Mepsi can be held liable under 42 U.S.C. § 1985.  Unlike section 1983, section 1985(3) reaches "private conspiracies aimed at interfering with rights constitutionally protected against private, as well as official, encroachment." United Bhd. of Carpenters v. Scott, 463 U.S. 825, 833 (1983); Scott v. Ross, 140 F.3d 1275, 1284 (9th Cir. 1998); Amelunxen v. Univ. of Puerto Rico, 637 F.Supp 426 (D.P.R. 1986).  Claims brought pursuant to section

---

[4]Puerto Rico law provides that a person can be involuntary committed to a psychiatric hospital without a prior hearing for no more than 24 hours when immediate hospitalization is required to prevent that person from inflicting physical harm on himself or others. 24 L.P.R.A. §§ 6002, 6006.

Civil No. 98-1273 (JAF)                                          14-

1985(3) generally do not require state action. See id. at 830 (the

exception is that a conspiracy to infringe First Amendment rights does

not violate § 1985(3) unless there is state involvement or the

conspiracy's aim is to influence state activity).

     Nevertheless, we dismiss Plaintiff's claim against Mepsi under

section 1985(3) as well, because Plaintiff has failed to allege any

specific facts which show the existence and scope of a conspiracy.

"In an effort to control frivolous conspiracy suits under § 1983,

federal courts have come to insist that the complaint state with

specificity the facts that, in the plaintiff's mind, show the

existence and scope of the alleged conspiracy. It has long been the

law in this and other circuits that complaints cannot survive a motion

to dismiss if they contain conclusory allegations of conspiracy but do

not support their claims with references to material facts." Slotnick

v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977) (citing Dunn v. Gazzola,

216 F.2d 709, 711 (1st Cir. 1954)); Kadar Corp. v. Milbury, 549 F.2d

230 (1st Cir. 1977); Ellingburg v. King, 490 F.2d 1270 (8th Cir. 1974);

Powell v. Jarvis, 460 F.2d 551 (2d Cir. 1972); Fletcher v. Hook, 446

F.2d 14 (3d Cir. 1971); Johnson v. Stone, 268 F.2d 803 (7th Cir. 1959).

A complaint under a civil rights cause of action must contain specific

factual allegations in support of the plaintiff's right to recovery.

Batista Malave v. Com. of Puerto Rico, 631 F.Supp. 936, 939 (D.P.R.

1986). Mere conclusory allegations of a conspiracy without reference

to material facts are insufficient. Id.; see also Gilbert v. City of

Civil No. 98-1273 (JAF)                                                    15-

<u>Cambridge,</u> 932 F.2d 51 (1st Cir. 1991).  Plaintiff's only allegation regarding a conspiracy between Mepsi and state officials is his statement in the complaint that all Defendants "acted under color of law and with gross negligence and/or reckless disregard to [his] constitutional rights in furtherance of a conspiracy to effectively deprive [him] of his personal freedom and  liberty rights without the due process of law."  This bare bones, conclusory allegation is insufficient to state a claim of conspiracy between Mepsi and state officials.  <u>Slotnick</u>, 560 F.2d at 33.  Accordingly, we dismiss the federal claims against Mepsi.

Plaintiff has also failed to provide the degree of specificity that a section 1983 claim requires with respect to Defendants Cardona and Rosario.  <u>Gilbert</u>, 932 F.2d at 62; <u>Dewey v. Univ. New Hampshire</u>, 694 F.2d 1 (1st Cir. 1982).  Plaintiff has not shown a causal connection between each Defendant's conduct and the deprivation of his liberty interest.  <u>Fernandez v. Chardon</u>, 681 F.2d 42 (1st Cir. 1982).

3.    <u>Section 1983 Claim Based on Deprivation of Property Right</u>

a.    <u>Statute of Limitations</u>

Plaintiff must have been aware of his dismissal immediately upon reading the letter dated May 20, 1997 from Defendant Alvarez. Defendant filed this complaint March 17, 1998, within one year of the injury.  Therefore, there is no statute of limitations bar.

Civil No. 98-1273 (JAF)                                                16-

### b.  <u>Sufficiency of Facts Alleged</u>

Plaintiff alleges that the Individual Defendants summarily suspended and then dismissed him from his career position at the Institute without granting him effective notification and a prior hearing in violation of his due process rights.  The Fourteenth Amendment guarantees public employees who have a property interest in continued employment the right to an informal hearing before they are discharged.  <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 538 (1985).  State law, rather than the Constitution, determines whether an employee has a property interest in continued employment. <u>Bishop v. Wood</u>, 426 U.S. 341,344 (1976).  Puerto Rico law confers property rights in employment only to employees with "career" or tenured jobs.  <u>Kauffman v. Puerto Rico Tel. Co.,</u> 841 F.2d 1169, 1173 (1st Cir. 1988); 3 L.P.R.A., § 1336(4) (1978).  Defendant was a career employee and, therefore, had a property right in his employment.

Neither Plaintiff nor Defendants have explained the factual circumstances surrounding Plaintiff's suspension and alleged dismissal, and whether any sort of pre or post-deprivation hearing took place.  For purposes of determining a Fed. R. Civ. P. 12(b)(6) motion, we are obliged to accept Plaintiff's facts as true.  Plaintiff alleges that Defendants fired him without any pre or post-deprivation hearing as due process requires.  Defendants did not clearly deny this allegation or present any relevant facts on the subject.  Accordingly, we find that Plaintiff has stated a claim for deprivation of a

Civil No. 98-1273 (JAF)                                              17-

property interest.  Naturally, much more factual detail regarding the

alleged employment dismissal would have been necessary were we at the

summary judgment stage of litigation.

     c.  **Qualified Immunity Defense**

    Given that Plaintiff has adequately stated a claim under section

1983 for a violation of his property right, we next evaluate the

Individual Defendants' claims of qualified immunity.    Qualified

immunity is an affirmative defense shielding public officials sued in

their personal capacities from civil damages so long as their conduct

does not violate any clearly-established statutory or constitutional

right of which a reasonable person would be aware.    <u>Harlow v.</u>

<u>Fitzgerald</u>, 457 U.S. 800, 818 (1982);   <u>Nereida-Gonzalez v. Tirado-</u>

<u>Delgado</u>, 990 F.2d 701, 704 (1st Cir. 1993) (stating that the doctrine

of qualified immunity "shields government officials performing

discretionary functions from civil liability for money damages when

their conduct does not violate 'clearly established' statutory

authority or constitutional rights of which a reasonable person would

have known").  The doctrine consists of two analytical prongs.  First,

the court must determine, as a matter of law, whether the

constitutional right in question was clearly established at the time

of the alleged violation.  <u>Siegert v. Gilley</u>, 500 U.S. 226 (1991); <u>St.</u>

<u>Hilaire v. Laconia</u>, 71 F.3d 20, 24 (1st Cir. 1995); <u>Martinez-Rodriguez</u>

<u>v. Colon-Pizarro</u>, 54 F.3d 980, 988 (1st Cir. 1995); <u>see also</u> <u>Anderson</u>

<u>v. Creighton</u>, 483 U.S. 635, 640 (1987).  The second issue we must

Civil No. 98-1273 (JAF)                                      18-

determine is whether a reasonable, similarly situated official would understand that the challenged conduct violated the established constitutional right.  Id.

A right is "clearly established" for qualified immunity purposes if the contours of the right are sufficiently defined that a reasonable official would understand that what he is doing violates that right.  Anderson, 483 U.S. at 640.  We find that it is clearly established, and that any reasonable state official in Defendants' positions would know, that a Puerto Rico government employee in a career position has a property right in that employment and his employer must grant him an opportunity to be heard either before or after his dismissal.

As we have stated, the facts surrounding Plaintiff's alleged dismissal remain unclear at this stage.  It is unclear why Plaintiff was dismissed and whether or not he ever received a hearing. Defendants' motions do not provide sufficient factual background or corresponding argumentation to support a qualified immunity defense. Accordingly, we find that Defendants do not enjoy qualified immunity.

**4.  Defendant José Fuentes-Agostini in his Official Capacity**

Plaintiff sues Defendant José Fuentes-Agostini, Attorney General of the Commonwealth of Puerto Rico, in his official capacity.  It is well settled that a suit against a state official in his official capacity is equivalent to a suit against the state itself.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New

Civil No. 98-1273 (JAF)                                           19-

York City Dept. of Social Services, 436 U.S. 658, 690 n.55) (1978)
(stating that official-capacity suits "generally represent only
another way of pleading an action against an entity of which an
officer is an agent")).   Therefore, we must treat a suit against
Defendant Fuentes-Agostini the same as a suit against Puerto Rico.
Id. at 166; Hafer v. Melo, Jr., 502 U.S. 21, 25 (1991).   Neither a
state nor its officials acting in their official capacities are
"persons" under section 1983.   Therefore, a state may not be sued in
federal court pursuant to section 1983 for money damages.   See Will v.
Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) (stating
that unless a state has waived its Eleventh Amendment immunity or
Congress has overridden it, a state or a state agency cannot be sued
in federal court directly in its own name).   Accordingly, Plaintiff's
claim against Defendant Fuentes-Agostini, for monetary damages, is
dismissed.

However, Defendant Fuentes-Agostini can be sued in his official
capacity for prospective injunctive relief because "official capacity
actions for prospective relief are not treated as actions against the
State."   Will, 491 U.S. at 71 n.10 (quoting Graham, 473 U.S. at 167
n.14).   In order to prevail in his official capacity suit against
Defendant Fuentes-Agostini, Plaintiff must show that execution of
Puerto Rico's policy or custom deprived him of his constitutional
rights.   See Hafer, 502 U.S. at 25; Graham, 473 U.S. at 166; Monell,
436 U.S. at 694.   Plaintiff has failed to specify any particular

Civil No. 98-1273 (JAF)                                              20-

policy of Puerto Rico which is responsible for the alleged deprivation of either his property right or liberty right. In fact, the complaint makes no mention of a state policy whatsoever. Accordingly, Plaintiff's complaint against Defendant Fuentes-Agostini in his official capacity is dismissed.

**B.  State Law Claim: Article 1802**

　　**1.  Subject Matter Jurisdiction**

Each Plaintiff also brings a claim against Defendants pursuant to Article 1802. See 31 L.P.R.A. § 5141. The doctrine of pendent jurisdiction authorizes a federal court to hear a claim over which there is no independent basis for federal jurisdiction where there is a "common nucleus of operative fact" with a substantive federal claim. United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). The court may exercise its discretionary jurisdiction provided it balances the following factors to determine the different repercussions of accepting such jurisdiction: (1) whether considerations of judicial economy, convenience and fairness to the litigants are present; (2) whether the state law issues are clearly resolved on the state level; (3) whether state issues predominate in terms of proof, scope of issues or comprehensiveness of remedies; and (4) whether the divergence of state and federal issues is likely to create jury confusion. Gibbs, 383 U.S. at 726-27.

Civil No. 98-1273 (JAF)                                          21-

In this case, the same facts lie at the center of Plaintiffs'
state and federal claims.  The second factor is irrelevant here since
neither party has raised any question of unresolved state law issues.
Finally, state issues do not predominate, and we do not see any
potential for jury confusion regarding the issues.  Rodriguez v.
Comas, 888 F.2d 899, 905 (1st Cir. 1989) (holding that federal district
court may exercise pendent jurisdiction over state-law claims of
spouse of § 1983 plaintiff provided the state-law claims share a
common nucleus of operative fact with the § 1983 claims); see also
Rodriguez-Rios v. Cordero, 138 F.3d 22, 26 (1st Cir. 1998).  Because
concerns of judicial efficiency clearly dominate here, we exercise
jurisdiction over the Article 1802 claims.

**2.    Standing**

After determining that we have jurisdiction, we next resolve the
issue of standing.  We find that, unlike the section 1983 claims, each
Plaintiff, Iván Acevedo-Colón, Milagros Arroyo, and their conjugal
partnership, has standing to maintain a claim pursuant to Article 1802
since, under Puerto Rico law, the spouse or relatives of an individual
may have a derivative Article 1802 action for injuries suffered
directly by the individual. See Santini Rivera v. Serv. Air, Inc., 94
J.T.S. 121, 184 (1994); Correa v. Puerto Rico Water Resources
Authority, 83 P.R.R. 139, 143-45 (1961); Hernández v. Fournier, 80
P.R.R. 94, 97-104 (1957); see also Nieves Domenech v. Dymax Corp., 952
F.Supp. 57, 66 (D.P.R. 1996).

Civil No. 98-1273 (JAF)                                                22-

### 3.   Stating a Claim under Article 1802

Article 1802 provides, in relevant part, that "[a] person who by
an act or omission causes damage to another through fault or
negligence shall be obliged to repair the damage so done."   31
L.R.P.A. § 5141.   "To recover on a negligence theory, a plaintiff
suing for personal injuries under Article 1802 must establish (1) a
duty requiring the defendant to conform to a certain standard of
conduct, (2) a breach of that duty, (3) proof of damage, and (4) a
causal connection between the damage and the tortious conduct."
Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc., 124 F.3d 47, 50 (1st
Cir. 1997) (citing Sociedad de Gananciales v. González Padín, 17 P.R.
Offic. Trans. 111, 125 (1986)).

### 4.   Article 1802 Claim Based Upon Deprivation of Liberty Right

Claims under Article 1802 have a one-year statute of limitations.
31 L.P.R.A. § 5298.   We apply the same analysis here that we applied
to the section 1983 claim regarding the alleged deprivation of
Plaintiff's liberty interest.   For the reasons articulated in the
previous section regarding the section 1983 claim based on a violation
of Plaintiff Acevedo-Colón's liberty right, we find that the Article
1802 claim is time-barred.   The statute of limitations clock began to
run at the time of the injury.   The statute of limitations was not
tolled because Plaintiffs were on inquiry notice since the time of
Plaintiff Acevedo-Colón's confinement.   Plaintiffs' Article 1802 claim
is, therefore, time-barred.

Civil No. 98-1273 (JAF)                                        23-

Additionally, we rest our decision to dismiss the Article 1802 claim based on the liberty right violation for failure to allege sufficient facts. Plaintiffs have not adequately articulated the *exact* duties owed, *by whom*, and how the breach *caused* the injury.

**5.    Article 1802 Claim Based Upon Deprivation of Property Right**

Plaintiff must have been aware of his dismissal immediately upon reading the letter dated May 20, 1997 from Defendant Alvarez. Defendant filed this complaint March 17, 1998, within one year of the injury. Our analysis regarding Plaintiffs' section 1983 claim based upon the alleged deprivation of his property right in his employment is the same for the identical claim sounding in state law. There is no statute of limitations bar.

As we already expounded in the section 1983 analysis, neither Plaintiff nor Defendants have explained the factual circumstances surrounding Plaintiff's suspension and alleged dismissal and whether any sort of pre or post-deprivation hearing took place. However, for purposes of this Fed. R. Civ. P. 12(b)(6) motion, we accept Plaintiffs' facts as true: that Individual Defendants fired Plaintiff Acevedo-Colón without any pre or post-deprivation hearing as due process requires. Thus, Plaintiffs have stated a claim under Article 1802 for a deprivation of their property rights.

AO 72
(Rev 8/82)

Civil No. 98-1273 (JAF)                                                    24-

## III.

### Conclusion

In light of the foregoing analysis, the motion to dismiss all of the section 1983 claims of Plaintiff Milagros Arroyo and the conjugal partnership is **GRANTED**.   The motion to dismiss all claims against Defendant Fuentes-Agostini in his official capacity is **GRANTED**.   The motion to dismiss the section 1983 claim against the Individual Defendants for deprivation of Plaintiff Acevedo-Colón's liberty right is **GRANTED**.   Defendant Mepsi's motion to dismiss the sections 1983 and 1985 claims against it is **GRANTED**.   The motion to dismiss Plaintiff Acevedo-Colón's section 1983 claim against the Individual Defendants for a violation of his property right is **DENIED**.   The motion to dismiss the Article 1802 claims against Individual Defendants for deprivation of Plaintiff Acevedo-Colon's liberty rights is **GRANTED**. The motion to dismiss the Article 1802 claims against Individual Defendants for deprivation of Plaintiff Acevedo-Colón's property rights is **DENIED**.

The following remain: (1) Plaintiff Acevedo-Colón's section 1983 claims against all Individual Defendants for a deprivation of his property right; and (2) Plaintiffs Acevedo-Colón, Arroyo, and the conjugal partnership's state law claims under Article 1802 against Individual Defendants for deprivation of property rights.

The dispositions made herein are without prejudice of future Fed. R. Civ. P. 56 disposition if defendants can establish that there are

Civil No. 98-1273 (JAF)                                                          25-

no genuine issues of material fact on the surviving causes of action.

In the context of Fed. R. Civ. P. 12(b)(6), without more, further

analysis is foreclosed.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this            *16th* day of August, 1999.

JOSE ANTONIO FUSTE
U.S. District Judge